LUDLOW B. CREARY II (#193793)
**THE LAW OFFICES OF LUDLOW B. CREARY II**
555 W. 5TH STREET, FLOOR 35
LOS ANGELES, CA 90013
TELEPHONE: (323) 305-4849
FACSIMILE:  (323) 477
ATTORNEY FOR PLAINTIFF: SHEILA BATES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA BATES,<br><br>　　　　Plaintiff,<br>　　vs.<br><br>CITY OF TORRANCE; OFFICER KAWAMOTO and DOES 1 through 10 inclusive,<br><br>　　　　Defendants. | Case No.:<br><br>**COMPLAINT; DEMAND FOR JURY TRIAL** |

## Introduction

1.  This case challenges the abuse of discretion, excessive force, and negligent acts that deprived the Plaintiff, Sheila Bates, of her federal and state rights. Without probable cause or reasonable suspicion to believe that Miss Bates was a danger to the public or any officer, Officer Kawamoto and DOES 1 through 10 inclusive of Torrance Police Department brutally assaulted and falsely arrested Miss Bates. Plaintiff, Sheila Bates, complains of Defendants Torrance Police Department, Officer Kawamoto and DOES 1 through 10 inclusive, as follows:

COMPLAINT- DEMAND FOR JURY TRIAL - 1

## VENUE AND JURISDICTION

2. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1334, and arises under 42 U.S.C. §§ 1983 and 1988. State law claims for relief are within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue is proper in this Court because the unlawful acts and practices alleged herein occurred in the Torrance, California, which is within this judicial district pursuant to 28 U.S.C. § 1391.

## PARTIES

3. At all relevant times herein, PLAINTIFF was and is a resident of the State of California in the County of Los Angeles.

4. Defendant CITY OF TORRANCE (hereinafter referred to as "COT") is, and at all times in this complaint was, an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COT possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the TORRANCE POLICE DEPARTMENT (hereinafter referred to as "TPD") and its tactics, methods, practices, customs and usages.

5. Defendant OFFICER KAWAMOTO is, and at all times in this complaint was, an individual employed by COT and/or its subsidiaries, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, COT

6. At all relevant times mentioned herein and material hereto, the Defendant DOE Officers described below engaged in law enforcement as police officers, sergeants, captains, lieutenants, and/or civilian employees, agents, and representatives of Defendant COT, duly employed as police officers by the TPD, who acted in the course and scope of their employment at all times relevant to the acts and omissions herein alleged.

COMPLAINT- DEMAND FOR JURY TRIAL - 2

7. PLAINTIFF is informed and believes and thereon alleges that each of the Defendants designated as a DOE are intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged. The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to PLAINTIFF who, therefore, sues said Defendants by such fictitious names. PLAINTIFF will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

8. Defendants, and each of them, acted under color of law and did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated established and commonly understood substantive and procedural law.

## FACTS COMMON TO ALL COUNTS

9. On May 14, 2019, Plaintiffs attended a City of Torrance council meeting at the City of Torrance City Council chamber as part of a protest. The purpose of the protest was to express disapproval of the City's handling of the December 9, 2018 shooting of an unarmed black man, Christopher Deandre Mitchell by Torrance Police Officers Anthony Chavez and Matthew Concannon.

10. During the protest, numerous individuals including Plaintiffs verbally expressed opinions of Torrance and Torrance Police Officers. At no time did any protesters use violence. No protesters were armed.

11. After individuals had exercised their First Amendment rights to express disapproval of Torrance and its handling of the Mitchell case, the Torrance City Council ended the meeting before completing its business and ordered all members of the public to leave the City Council meeting chamber. This disapproval, at various times and by various individuals, included curse words, insults, obscene gestures, and chants of "Say his name – Christopher DeAndre Mitchell."

12. After all members of the public had been ordered to leave, at least ten and up

to thirty Torrance Police Officers lined up in the City Council chamber; at least three were holding batons while facing protesters, but at least six or more were not holding batons while facing protesters.

13. The City Council chamber is a large room with a raised platform with a dais for City Council members to sit during meetings facing the public. There is a podium facing the raised platform and dais for members of the public to use while addressing the Council. There are a number of seats available for members of the public to use. The seats are arranged in rows facing the dais, with an aisle down the center from the entrance doors to the podium approximately 8' wide. On information and belief, the chairs are situated in twelve rows of ten chairs each, both sides of the center aisle for a total of 240 chairs. The chairs are secured to the floor such that they cannot be moved and are contiguous with each other, so that a person cannot walk between chairs in the row. The chairs have seats on hinges that rest in a default position of being folded up, for easier passage through the row, but can be folded down to sit on.

14. At some point while the protesters were beginning to leave, some continuing to express opinions, Mayor Patrick J. Furey returned to the dais and used the microphone to tell protesters that they would be arrested if they did not leave, pursuant to Penal Code § 403. At that point at least three officers took out their batons, but other officers next to them did not.

15. Protesters continued to leave the chamber through the main door, while continuing to express opinions about several subjects, including: (1) the shooting of Mitchell; (2) the investigation into the shooting of Mitchell; (3) the Council ordering all present to leave; and (4) the police officers acting in an intimidating fashion towards protesters.

16. At the time of the events at issue in this lawsuit, the group of protesters had largely or completely moved either out of the chamber altogether to the corridors

outside, or towards the main door at the back of the chamber behind the last row of chairs. The situation was under control, the City Council had already vacated the chamber, and there was no imminent threat of violence or other circumstance that would have required officers to complete the evacuation of the room in any particular timeframe.

17. One protester, Sheila Bates, who is a slightly built woman (on information and belief, approximately 5'3" and 105 pounds) was standing in a group of people who were making their way towards the exit on the right side of the room (facing the exit). On information and belief, Sheila was standing near the grieving mother of Christopher DeAndre Mitchell. Within view of Kawamoto, put up her to another officer who was standing quite close to the grieving mother and rushing her out of the room. Bates scolded the officer, "Have some respect – she's a grieving mom. Fall back and have some damn respect." Fifteen seconds later, she had turned left towards the exit in the last row of chairs and walked at least six chair lengths towards the exit. She was neither the last person nor the slowest moving person in the group. She had moved more quickly than several others to get to where she was. She did not appear to be doing or saying anything in particular.

18. At that point Kawamoto entered the row of chairs where she was standing, quickly approached her, and told her that it was "time to go" as he grabbed her and pulled her, and then aggressively pushed her with his baton multiple times until she lost her balance and fell backwards onto one of the chairs, at which point he continued to push her with his baton. At least three, and up to five, other officers joined in aggressively harassing her at that point, and it appeared many of them were pushing, shoving, or grabbing her. Very quickly, several of them jumped on top of her and she could be heard screaming in distress underneath several officers.

COMPLAINT- DEMAND FOR JURY TRIAL - 5

# FIRST CAUSE OF ACTION
# EXCESSIVE FORCE – 42 U.S.C. § 1983
# (Against KAWAMOTO and DOES 1 through 10, inclusive)

19. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

20. This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

21. As a result of the above-described intentional acts and omissions of the Defendant Officers, collectively and individually, Plaintiff's Fourth Amendment constitutional right to be free from unreasonable searches and seizures, as applied to state actors by the Fourteenth Amendment, was violated when:

   a. KAWAMOTO grabbed Miss Bates and pulled her, and then aggressively pushed her with his baton multiple times until she lost her balance and fell backwards onto one of the chairs, at which point he continued to push her with his baton without probable cause or reasonable suspicion.

   b. At least three, and up to five, other officers joined in aggressively harassing Miss Bates at that point, and it appeared many of them were pushing, shoving, or grabbing her. Very quickly, several of them jumped on top of her and she could be heard screaming in distress underneath several officers.

22. At no point did Miss Bates pose a reasonable threat of violence or danger to the Defendant Officers or to any other individual. Miss Bates made no aggressive movements, furtive actions, or physical movements that would have suggested to any reasonable officer that Miss Bates had the will or ability to inflict substantial

bodily harm against any individual.

23. Additionally, at no point during the incident did Miss Bates show any sign of resisting the Defendant Officers.

24. As a direct and proximate result of the aforementioned wrongful acts of Defendants, individually and as peace officers, Miss Bates sustained and incurred damages for physical injuries, emotional injury and pain, mental anguish, suffering, humiliation, embarrassment, as well as harm to his reputation in the community.

25. The conduct of the Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

26. As a result of the conduct of Defendant Officers, they are liable for Plaintiff's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

27. Accordingly, Defendant Officers are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

## SECOND CAUSE OF ACTION
## UNLAWFUL DETENTION – 42 U.S.C. § 1983
### (Against KAWAMOTO and DOES 1 through 10, inclusive)

28. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

29. This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

30. As a result of the above described intentional acts and omissions of the

Defendant Officers, collectively and individually, Plaintiff's Fourth Amendment constitutional right to be free from unreasonable searches and seizures, as applied to state actors by the Fourteenth Amendment, was violated when:

    a. KAWAMOTO unlawfully stopped and detained Miss Bates and other Defendant Officers jumped on top of her without a warrant, reasonable suspicion, or probable cause to believe Miss Bates committed, was committing or would commit a crime.

31. The conduct of the Defendant Officers was willful, wanton, malicious and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

32. As a result of the conduct of Defendant Officers, they are liable for Plaintiff's injuries, either because they were integral participants in the unlawful detention and arrest, or because they failed to intervene to prevent these violations.

33. Accordingly, Defendant Officers are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

### THIRD CAUSE OF ACTION
### MUNICIPAL LIABILITY – 42 U.S.C. § 1983
### (Against Defendant COT)

34. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

35. Defendant COT is and at all times herein mentioned, has been a public entity duly authorized and existing as such in and under the laws of the State of California. At all times herein mentioned, Defendant COT possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the

operation of the TPD officers and their tactics, methods, practices, customs and usages.

36. At all times herein mentioned, Defendant Officers and each of them, were employees acting under the direction and control of the COT, who knowingly and intentionally promulgated, maintained, applied, and enforced the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Such customs, policies, practices and usages at all times herein mentioned, required and encouraged the employment, deployment and retention of persons as peace officers who have demonstrated their brutality, dishonesty, and numerous other serious abuses of their powers as peace deputies employed by the COT.

37. The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by Defendant COT include, but are not limited to:

a. Defendant COT had knowledge, prior to and since this incident, of similar allegations of wrongful and unlawful battery, improper tactics, and abuse of discretion by TPD employees, including the individual Defendant Officers herein, and refused, with deliberate indifference, to enforce established administrative procedures to ensure public safety, protection of citizens' rights and the Plaintiff's liberty interests;

b. Defendant COT refused to adequately discipline individual employees found to have committed similar acts of negligence and excessive force;

c. Defendant COT refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by HBPD employees;

d. Defendant COT failed to adequately supervise the actions of employees under its control;

e. Defendant COT failed to adequately train its officers so as to avoid

constitutional violations;

f. Defendant COT tacitly condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct;

g. Defendant COT tacitly condones and encourages use of excessive force on citizens;

h. Defendant COT fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by May 14, 2019, and thereafter, represented the unconstitutional policies, practices and customs of the COT.

38. The decisions of Defendant Officers to brutally batter Miss Bates for no conceivably valid reason represents a larger systemic issue of predatory policing and a culture among TPD that encourages violence.

39. By reason of the aforesaid policies, customs, practices and usages, Miss Bates' rights under the Fourth and Fourteenth Amendments of the United States Constitution were violated.

40. On information and belief, not one of the Defendant Officers involved in the aforementioned incident has been reprimanded or sanctioned by Defendant COT or TPD for their actions against Miss Bates.

41. On information and belief, the extreme escalation of a stop into a violent attack was ratified by Defendant COT and TPD by failing to discipline any officer involved or modify training to address this type of situation in the future.

42. Defendant COT has acted with deliberate indifference to Miss Bates' constitutional rights. As a proximate result of these acts, Miss Bates' constitutional rights have been violated, causing her to suffer physical injuries, emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

43. Plaintiff also seeks attorney fees under this claim pursuant to 42 U.S.C. § 1988.

## PRAYER

WHEREFORE, PLAINTIFF requests entry of judgment in his favor and against Defendants as follows:

1. For compensatory (or general) damages, including pain and suffering, in an amount exceeding the minimum jurisdictional requirement of this Court according to proof;
2. For special damages according to proof;
3. For punitive damages as provided by federal and state law, in an amount to be proved against each individual Defendant;
4. For prejudgment interest;
5. For attorney's fees pursuant to 42 U.S.C. § 1983 & California Civil Code § 52.1 (h);
6. For reasonable costs of this suit incurred herein;
7. For such other and further relief as the Court may deem just, proper and appropriate.

Dated: May 5, 2021

**THE LAW OFFICE OF LUDLOW B. CREARY II**

*/s/Ludlow B. Creary II*
_____
Ludlow B. Creary II
Attorney for Plaintiff Sheila Bates

## DEMAND FOR JURY TRIAL

PLAINTIFF hereby respectfully demands a trial by jury on all issues and claims.

Dated: May 5, 2021

                               **THE LAW OFFICES OF**
                               **LUDLOW B. CREARY II**

                               */s/Ludlow B. Creary II*
                               _____
                               Ludlow B. Creary II
                               Attorney for Plaintiff Sheila Bates